Argued May 1, reversed and remanded October 4, 1967

WHITNEY ET UX, *Respondents, v.* WEBER, INC., *Appellant.*

432 P. 2d 316

*Henry L. Hess, Jr.,* Pendleton, argued the cause and filed briefs for appellant.

*B. D. Isaminger,* Pendleton, argued the cause for respondents. On the brief were Isaminger & Hanzen and William E. Hanzen, Pendleton.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, REDDING* and FORT,* Justices.

O'CONNELL, J.

This is an action to recover the unpaid installments on a contract for the sale of certain property in answer to which defendant seeks reformation of the contract on the ground of mutual mistake. Defendant appeals from a judgment for plaintiff.

The contract, entitled "Conditional Sale Contract," is for the sale of a warehouse, two grain bins and other property formerly used by plaintiffs in connection with the operation of a pea cleaning plant. The contract provides that title would remain in plaintiffs until the full purchase price was paid. Paragraph (1) provides that the total purchase price is $20,000, payable in installments over a period of several years. No interest was payable on the balance unless payment was not made on the due date of an installment. Paragraph (1) then provides:

> "* * * In the event that any installment shall be delinquent it shall bear interest at the rate of 7% per annum from the due date until paid, all without prejudice to seller's other remedies available at law or as herein set forth."

Paragraph (7) entitled "SELLER'S REMEDIES IN EVENT OF DEFAULT" reads as follows:

> "In the event that purchaser fails to make the payments herein provided for promptly when due,

---

*Redding and Fort, JJ., did not participate in this decision.

or breaches or fails to perform any of the terms hereof, seller shall have the right to immediately retake possession of said property and the leased premises and to eject purchaser therefrom, and all rights of purchaser therein shall immediately cease and determine and seller may retain as liquidated damages any sums theretofore paid to seller by purchaser under the terms hereunder.

"It is understood and agreed that purchaser intends to remove the 1,000-bushel and 3,000-bushel storage bins and the 40′ x 70′ open storage building from the leased premises. For the purpose of this agreement the bins shall be valued at $1,000.00 each and the storage building at $1,500.00. The first $2,000.00 paid in by purchaser on this agreement shall be deemed to apply to the storage bins, if removed; and if purchaser does remove them it shall be obligated to pay the said purchase price therefor irrespective of the continuance of this contract; and if the sum of $2,000.00 shall not have been paid in at the time of any default hereunder, purchaser shall be obligated to keep said items and remit to seller the difference between the amount actually paid in and $2,000.00, unless seller specifically elects to retake said property in lieu thereof. The next $1,500.00 to be paid shall be deemed to apply to the storage building (40′ x 70′) but it is agreed that it shall not be moved until the full first year's payment totalling $4,000.00 shall have been made."

Defendant contends that the parties agreed to limit plaintiffs' remedy in case of default to the right of repossession of the property and retention of the money paid on the contract, except for the special circumstances relating to the payment for the two storage bins and the storage building recited in paragraph (7).

We are of the opinion that the evidence supports defendant's contention. The contract is not in the form

ordinarily used in Oregon in making conditional sales of land. It is apparent from the instrument that the parties intended to enter into a special kind of bargain, particularly with respect to the seller's remedies.

The first part of paragraph (7) gives the seller the right upon purchaser's default to retake possession of the property and retain as liquidated damages all payments made on the contract. The customary provision giving the seller the right to specifically enforce the contract is not employed. Paragraph (7) goes on to provide the seller's remedies with respect to the two storage bins and the storage shed. These items are given a separate valuation; $2,000 for the bins and $1,500 for the storage shed. The first $2,000 paid in is to apply to the bins, if removed. If the bins are removed, the purchaser is obligated to pay $2,000 for them "irrespective of the continuance of this contract" and if the sum of $2,000 is not paid at the time of default the "purchaser shall be obligated to keep said items and remit to seller the difference between the amount actually paid in and $2,000 unless seller specifically elects to retake said property in lieu thereof." If the purchaser was to be held liable for any deficiency resulting from a failure to pay the $20,000 purchase price, the separate provision relating to purchaser's liability for the full payment of the bins would have been unnecessary.

Paragraph (7) reasonably construed, evinces the intention of the parties to relieve the purchaser of the obligation to pay any deficiency except the balance due on the storage bins.

This construction of the contract is supported by the testimony of Mr. Donald Duncan, the attorney who prepared the conditional sale contract in question.

Both plaintiff G. M. Whitney, and Don Weber representing defendant, were present in Mr. Duncan's office when the terms of the contract were being discussed. Mr. Duncan testified that in the preliminary conference the discussion was to the effect that "Webers were taking it [the pea cleaning plant] conditionally: If they were going to make a go of it they continue paying it; if they were not, Mr. Whitney was to take it back."

The handwritten notes made by Mr. Duncan during the course of the conference were received in evidence. These notes contained the following entry:

"Default Jerry [G. M. Whitney] can retake only —no defic. [abbreviation for 'deficiency']."

Mr. Duncan further testified as follows:

"Q * * * The first paragraph indicates that * * * on default shall have the right to retake possession of the property and retain any payments made as liquidated damages.

"Now, except for the two storage bins and the storage shed, were there to be in the agreement of the parties, as stated to you by them, be any other rights on the part of the seller in regard to default?

"A You say except as to the storage bins?

"Q Yes.

"A No, not on the plant itself.

"Q That, then, was to be the sole remedy of the seller?

"A It was. I recall that because it is unusual. I normally put a deficiency clause in the contract.

"Q I notice there is no provision for resale and deficiency; was that omission intentional or oversight?

"A Omission was intentional. As indicated by my notes there was to be no deficiency."

Plaintiffs argue that paragraph (1) of the contract would not be given full effect if defendant's position is accepted. That paragraph provides in part that:

> "* * * In the event that any installment shall be delinqunent it shall bear interest at the rate of 7% per annum from the due date until paid, all without prejudice to seller's other remedies available at law or as herein set forth."

Plaintiffs contend that the provision for the payment of 7% on delinquent installments would have no purpose if there was to be no liability for a deficiency, and further that the language "all without prejudice to seller's other remedies available at law or as herein set forth" indicates the intention of the parties to provide the usual remedies available against defaulting purchasers.

The provision for the payment of 7% upon delinquent payments would be effective even under defendant's interpretation of the contract because it would apply if defendant failed to pay for the bins as provided in paragraph (7). Mr. Duncan testified that this was the only purpose of the delinquency provision in paragraph (1).

Mr. Duncan also stated that the other provision in paragraph (1) as to "other remedies available at law or as herein set forth" was not inserted for the purpose of giving the seller a right to recover for a deficiency on the contract price as a whole.

It is not clear whether Mr. Duncan was serving as attorney for defendant, for the plaintiff G. M. Whitney, or for both. He testified that he billed Mr. Whitney for services in connection with the preparation of the contract but Mr. Whitney denies that he employed Mr. Duncan or that he received a bill for serv-

ices. It is undisputed that both Mr. Whitney and Mr. Weber were present in Mr. Duncan's office when the terms of the contract were discussed.

Defendant's explanation for the alleged agreement to limit plaintiffs' remedy as above explained was that plaintiffs' pea cleaning plant was a "white elephant" and that plaintiffs made the sale in an effort to salvage whatever they could out of the property. It was admitted by plaintiffs that the pea cleaning plant was not a "prosperous" business at the time of the sale to defendant.

The manner in which the contract was written, particularly paragraph (7), coupled with the testimony of Mr. Duncan with respect to the intention of the parties in entering into the contract is, we think, sufficient evidence to warrant a decree of reformation as prayed for by defendant.

The decree of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.